1  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   GREGORY W. KNOPP (SBN 237615)
2  JONATHAN S. CHRISTIE (SBN 294446)
   JENNIFER J. MCDERMOTT (SBN 339796)
3  1999 Avenue of the Stars, Suite 600
   Los Angeles, CA 90067-6022
4  Telephone:   310.229.1000
   Facsimile:   310.229.1001
5  gknopp@akingump.com
   christiej@akingump.com
6  jmcdermott@akingump.com

7  Attorneys for Defendant,
   TAPESTRY, INC.
8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

| | |
|---|---|
| SABRINA REED, individually, and on behalf of other members of the general public similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION** |
| v. | **DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453** |
| TAPESTRY, INC. which will do business in California as COACH LEATHERWARE CALIFORNIA, INC., a Maryland corporation; and DOES 1 through 10, inclusive, | [Civil Cover Sheet, Declarations of Jonathan Christie and Allison Ginsberg, Certification of Interested Entities or Persons and Corporate Disclosure Statement, Notice of Pendency of Other Actions, and Certificate of Service filed concurrently] |
| Defendants. | Date Action Filed: June 23, 2022 |
| | (*Santa Clara County Superior Court, Case No.* 22CV399419) |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Tapestry, Inc. ("Tapestry" or "Defendant") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. In support thereof, Defendant states as follows:

1. On June 23, 2022, plaintiff Sabrina Reed ("Reed") filed a putative class action against Defendant in the Superior Court of California, County of Santa Clara, as Case No. 22CV399419, entitled *Sabrina Reed, Plaintiff v. Tapestry, Inc., Defendant.* See Declaration of Jonathan Christie in Support of Defendant's Notice of Removal ("Christie Decl.") ¶ 2. Attached **as Exhibit A** to the Christie Declaration are copies of the Summons, Complaint, Civil Case Cover Sheet, and Proof of Service of Summons. *See* Christie Decl. ¶ 2, Ex. A. Attached as **Exhibit B** to the Christie Declaration are true and correct copies of the court's Notice of Case Management Conference, dated July 1, 2022, and Order Deeming Case Complex, dated July 1, 2022. *See* Christie Decl. ¶ 3, Ex. B. There have been no further proceedings in case number 22CV399419, and no other pleadings have been served upon or by Defendant in this action. *See* Christie Decl. ¶ 3.

2. Reed claims that Defendant failed to pay all of her minimum and overtime wages due, failed to provide proper meal and rest breaks, failed to pay all wages owed during employment and upon termination, failed to reimburse required business expenses, and engaged in unfair competition. *See generally* Complaint. She seeks to represent a class of "[a]ll persons who worked for Defendants at Kate Spade store locations as non-exempt, hourly paid employees in California, within four years prior to the filing of the initial complaint[] until the date of trial." Complaint ¶ 36.

3. The Complaint and Summons were served on July 6, 2022. *See* Christie Decl. ¶ 2. Defendant's Notice of Removal is timely because it is filed within thirty days of the completion of service. *See* 28 U.S.C. § 1446(b).

# DIVERSITY JURISDICTION UNDER THE
# CLASS ACTION FAIRNESS ACT

4. Under 28 U.S.C. § 1441(a), a defendant may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), this Court has original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated amount in controversy exceeds $5 million (exclusive of costs and interest). 28 U.S.C. §§ 1332(d)(2), (d)(5), and (d)(6). These requirements are satisfied here.

5. <u>Class Action</u>. CAFA applies to certain "class actions," which the statute defines as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute." 28 U.S.C. § 1332(d)(1)(B). Reed expressly brings "[t]his class action [] pursuant to California Code of Civil Procedure section 382." Complaint ¶ 1. Therefore, CAFA applies. *See Bodner v. Oreck Direct, LLC*, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006) (CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under . . . California Code of Civil Procedure Section 382").

6. <u>Class Size</u>. The putative class includes more than 100 members. *See* Complaint ¶ 37(a); Declaration of Allison Ginsberg in Support of Defendant's Notice of Removal ("Ginsberg Decl.") ¶ 12(b).[1]

7. <u>Diversity of Citizenship</u>. "[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). Minimal diversity exists if any class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2).

---

[1] A defendant may make the requisite showing by setting forth facts in the notice of removal or by affidavit. *See Lamke v. Sunstate Equip. Co.*, 319 F. Supp. 2d 1029, 1032 (N.D. Cal. 2004).

8. The putative class members include citizens of the state of California. Reed is a citizen of the state of California. During the relevant period, Reed worked in California and kept a California address on file with the company, both of which demonstrate her California citizenship. Complaint ¶¶ 5; Ginsberg Decl. ¶ 12(a); *see Lam Research Corp. v. Deshmukh*, 157 F. App'x 26, 27 (9th Cir. 2005) (defendant who had lived and worked for plaintiff in Washington was presumptively a Washington citizen, despite his claim that he had changed his domicile from Washington to California); *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012) (residential address provided by employee to employer is prima facie evidence of state citizenship). Further, Reed seeks to represent a class consisting of "employees in California." Complaint ¶ 33. By definition, the putative class includes individuals who, like Reed, are California citizens.

9. Tapestry is not a citizen of the state of California. Rather, Tapestry is a citizen of Maryland and New York. "[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Tapestry has not been incorporated in California. Rather, Tapestry is organized and incorporated under the laws of the State of Maryland. Ginsberg Decl. ¶ 3; *see also* Complaint ¶ 6. Nor is California the state in which Tapestry has its principal place of business. *See* Complaint ¶ 4. Rather, as shown below, Tapestry's principal place of business is located in the State of New York.

10. A corporation's principal place of business is determined under the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under this test, the principal place of business is the state where the company's officers "direct, control, and coordinate [its] activities." *Id.* A corporation's nerve center is a "single place" and "should normally be the place where the corporation maintains its headquarters." *Id.* at 93. Relevant factors include where executives reside and maintain offices, where administrative and financial offices are located, where the board of directors meets,

where income tax returns are filed, and where day-to-day control over the company is executed. *See*, *e.g.*, *Tomblin v. XLNT Veterinary Care, Inc.*, 2010 WL 2757311, at *4 (S.D. Cal. July 12, 2010).

11. Under these standards, Tapestry's principal place of business is in New York. The executive officers of Tapestry, including the chief executive officer, chief financial officer, and global head of human resources, maintain their offices at Tapestry's headquarters in New York, New York. Ginsberg Decl. ¶ 6. From its New York headquarters, Tapestry makes and implements operating, distribution, financial, employee relations, marketing, development, customer care, accounting, income tax, treasury, and legal policy decisions. *Id*. ¶ 7. Further, the majority of meetings of Tapestry's Board of Directors and stockholders take place in New York, its financial records are maintained there, and its income tax returns use the address of its New York headquarters when filed. *Id.* ¶¶ 8-10.

12. Accordingly, this action is between citizens of different states—Reed, who is a citizen of California (and seeks to represent a class including California citizens), and Tapestry, which is a citizen of Maryland and New York.

13. <u>Amount in Controversy.</u> Without conceding liability for any claims alleged by Reed or that class certification is proper, Defendant avers, for purposes of this Notice only, that Reed's claims as pled place more than $5 million in controversy. *Ibarra v. Manheim Investments, Inc*., 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy."); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (on removal, defendant does not "concede liability for the entire amount" alleged in complaint); *Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that

1  a jury will return a verdict for the plaintiff on all claims made in the complaint. The
2  ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not
3  what a defendant will actually owe." (citations omitted)). The Ninth Circuit has
4  instructed that removal is proper if, from the allegations of the Complaint and the Notice
5  of Removal, it is more likely than not that the amount in controversy exceeds $5 million.
6  *Rodriguez v. AT&T Mobility Servs., Inc.*, 728 F.3d 975, 981 (9th Cir. 2013) (overturning
7  previous Ninth Circuit precedent requiring proof of amount in controversy to a "legal
8  certainty" under some circumstances). This standard is easily satisfied here.

9        14.   For her Fourth Cause of Action, Reed claims that Tapestry failed to provide
10 class members with required rest periods for various reasons. *See* Complaint ¶¶ 66-75.
11 For example, she alleges that Tapestry "maintained a company-wide on-premises rest
12 period policy," which resulted in Tapestry "maintain[ing] control over Plaintiff and class
13 members during rest periods" and thus failing to provide duty-free breaks. *See*
14 Complaint ¶ 72. Under this alleged "policy," every break-eligible shift since June 23,
15 2018 included a violation. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891,
16 898 (C.D. Cal. 2005) (four-year statute of limitations applies to break claims where, as
17 here, plaintiff asserts claim under Section 17200 of the Business and Professions Code);
18 *see also Garza v. WinCo Holding, Inc.*, 2022 WL 902782, at * 7 (E.D. Cal. Mar. 28,
19 2022) ("[T]he allegation of consistent, universal denial of rest periods—such as
20 [plaintiff] makes—supports a violation rate of up to 100%."); *Archuleta v. Avcorp
21 Composite Fabrication, Inc.*, 2018 WL 6382049, at *4-5 (C.D. Cal. Dec. 6, 2018)
22 (finding estimate of one meal break violation per day for purposes of calculating the
23 amount in controversy reasonable, and stating that "[j]udges in this District have
24 routinely found allegations similar to the 'consistent policy' alleged in this case
25 sufficient to justify a 100 percent violation assumption rate"); *Vasquez v. Randstad US,
26 L.P.*, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018) (assuming 100 percent violation
27 rate was reasonable where plaintiff alleged that employees "were consistently required to
28 work through their meal periods"); *Duberry v. J. Crew Grp., Inc.*, 2015 WL 4575018, at

*3 (C.D. Cal. July 28, 2015) ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or similar language) and where the plaintiff offers no evidence rebutting this violation rate." (citing *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2-3 (Mar. 3, 2015))). Reed seeks a premium in the amount of one hour of pay for each workday that a compliant rest period was not provided. *See* Complaint ¶ 69. Since June 23, 2018, the putative class members collectively worked more than 239,000 rest break-eligible shifts (i.e., shifts longer than 3.5 hours) and earned more than $15.00 per hour on average. *See* Ginsberg Decl. ¶¶ 12(c), 12(d). Therefore, under Reed's theory, this claim places more than $3.5 million in controversy (239,000 alleged violations x $15 = $3,585,000).

15.  For her Fifth Cause of Action, Reed alleges that Tapestry owes penalties for having failed to pay all wages due to employees at the end of their employment, as required by Section 203 of the California Labor Code. *See* Complaint ¶¶ 76-80. Under Section 203, individuals whom an employer willfully denied wages due upon termination may recover penalties in the amount of their daily rate of pay for a period of up to 30 days. *See* Cal. Lab. Code §203. Under Reed's theory, because Tapestry failed to pay every employee premiums for rest break violations (Complaint ¶¶ 79-80), for example, every putative class member whose employment ended since June 23, 2019 is entitled to penalties under Section 203. *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1395-96 (2010) (three-year statute of limitations); *see also Mendoza v. National Vision, Inc.*, 2019 WL 2929745, at *6 (N.D. Cal. July 8, 2019) (in estimating amount in controversy, it is reasonable to assume every employee who quit or was discharged suffered a Section 203 violation because plaintiff alleged that defendant "'regularly and consistently' failed to pay wages as part of its 'uniform policies and practices'"); *Archuleta v. Avcorp Composite Fabrication Inc.*, 2018 WL 6382049, at *5 (C.D. Cal. Dec. 6, 2018) (reasonable to assume that every employee who left the company would be eligible for the maximum 30 days' worth of penalties because "[t]he complaint's

claim for waiting time penalties appeared to be at least in part based on an allegation that defendants never paid the 'overtime wages, minimum wages, and meal period violation [payments]' the employees were due."); *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013) (in estimating amount in controversy, where plaintiff alleges pervasive violations, "it is reasonable to assume that each employee leaving employment would [be owed Section 203 penalties]"); *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *5 (N.D. Cal. May 7, 2008) (accord). Further, because Reed alleges that Tapestry has never paid the amounts that were due at termination (not simply that it paid them late), she seeks the maximum 30-day penalty for each former employee. *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008) (in estimating amount in controversy, court may assume maximum penalty consistent with plaintiff's allegations). Since June 23, 2019, approximately 1,730 individuals who worked as non-exempt employees in Kate Spade brand stores in California have separated from the company. *See* Ginsberg Decl. ¶ 12(e). On average, these individuals worked at least 5.5 hours per day and earned more than $15.00 per hour. *Id.* ¶¶ 12(f), 12(d); *see also* Complaint ¶ 5 ("Plaintiff typically worked eight (8) or more hours per day."). Accordingly, an average 30-day penalty would be at least $2,475 (5.5 hours × $15 per hour × 30 days = $2,475). Therefore, for the putative class, the Section 203 penalties in controversy exceed $4 million ($2,475 × 1,730 eligible putative class members = $4,281,750).

16.  Reed also seeks attorneys' fees, which must be included in the amount in controversy when available by statute. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, 'then there is no question that future [attorneys' fees] are 'at stake' in the litigation,' and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." (internal citation omitted)); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *see* Complaint & Prayer for Relief. The Ninth Circuit "has established 25% of the common fund as a benchmark

award for attorney fees" in class actions. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Salazar v. Johnson & Johnson Consumer Inc.*, 2018 U.S. Dist. LEXIS 161293, at *19 (C.D. Cal. Sept. 19, 2018). Therefore, these fees place into controversy nearly an additional $2 million, given the potential damages and penalties at issue. *See*, *e.g.*, *Cortez v. United Nat. Foods, Inc.*, 2019 WL 955001, at *7 (N.D. Cal. Feb. 27, 2019) ("In the Court's experience, this appears to be a typical wage and hour class action to which courts in this Circuit would likely apply the 25% benchmark rate."); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at * 3 (C.D. Cal. Nov. 1, 2018) ("In this Court's experience, '[w]hen including attorneys' fees within the amount-in-controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate,' especially in wage and hour class actions like this one . . . the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction." (citations omitted)); *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 2014 WL 2199645, at *6 (N.D. Cal. May 27, 2014) (accounting for attorney's fees by adding 25 percent of potential damages to amount in controversy); *Giannini v. Nw. Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (same); *Jasso*, 2012 WL 699465, at *7 (reasonable to assume attorney's fees valued at 25 percent of common fund on removal); *see also Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (applying the 25% benchmark rate for attorneys' fees in controversy because "[i]n the Court's experience, Plaintiff brings a typical California wage and hour case in which courts in this Circuit would likely apply the 25% benchmark rate"); *Mariscal v. Arizona Tile, LLC*, 2021 WL 1400892, at *5 (C.D. Cal. Apr. 14, 2021) (accounting for attorneys' fees by using the 25% benchmark because "the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction"); *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) (denying motion to remand where defendant showed potential damages of $4.2 million because attorney's fees of 25 percent brought the total amount in controversy to $5.3 million).
///

17. Accordingly, in combination, Reed's claims for rest period violations, final pay penalties, and attorneys' fees easily place more than $5 million in controversy, without even considering Reed's other claims for unpaid minimum and overtime wages, meal period violations, untimely payment of wages during employment, and unreimbursed business expenses. *See* Complaint & Prayer for Relief. Therefore, the amount in controversy requirement is satisfied. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007) (remand denied under preponderance of the evidence standard where defendant's conservative estimates exceeded the requisite amount).

18. There are no grounds that would justify this Court in declining to exercise its jurisdiction pursuant to 28 U.S.C. § 1332(d)(3) or require it to decline to exercise jurisdiction pursuant to 28 U.S.C. § 1332(d)(4).

## VENUE

19. The United States District Court for the Northern District of California is the judicial district embracing the place where Case No. 22CV399419 was filed by Reed and is therefore the appropriate court for removal pursuant to 28 U.S.C. § 1441(a).

WHEREFORE, Defendant requests that the above action now pending against it in the Superior Court of California, County of Santa Clara, be removed to this Court.

Dated: August 5, 2022                AKIN GUMP STRAUSS HAUER & FELD LLP

                                     By:  */s/ Gregory W. Knopp*
                                          Gregory W. Knopp
                                          Attorney for Defendant
                                          TAPESTRY, INC.